IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

FEDERAL TRADE COMMISSION,          *

        Plaintiff,             *

        v.                   *        CV 620-073

F&G INTERNATIONAL GROUP     *
HOLDINGS, LLC; FG             *
INTERNATIONAL, LLC; and J.   *
GLENN DAVIS,               *

        Defendants.          *

## O R D E R

Before the Court is Plaintiff Federal Trade Commission's ("FTC") motion for summary judgment (Doc. 46), Defendants' motion to dismiss the FTC's request for equitable monetary relief and alternative motion for summary judgment (Doc. 48), and Defendants' motion to preserve Daubert challenge for trial (Doc. 50).

## I. BACKGROUND

Defendant F&G International Group Holdings, LLC ("FG Group") and Defendant FG International, LLC ("FG International") (collectively, the "Corporate Defendants") are entities owned and operated by Defendant J. Glenn Davis in Collins, Georgia. (Compl., Doc. 2, at 2-3.) The FTC filed suit against Defendants on July 28, 2020 under Section 13(b) of the FTC Act ("FTCA"), 15 U.S.C. §

53(b), to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTCA, 15 U.S.C. § 45(a). (Id. at 1.) The FTC alleges Defendants market FGI-4440 ("the Product"), an insulation coating, using deceptive claims related to R-values. (Id.) The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345. (Id. at 2.)

Before providing an overview of the underlying facts, the Court must first address an issue regarding the statement of undisputed material facts ("SUMF"). For summary judgment motions, the Local Rules require:

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, in addition to the brief, there shall be annexed to the motion a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof. Each statement of material fact shall be supported by a citation to the record. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party.

L.R. 56.1, SDGa. The FTC argues Defendants do not contest the bulk of its SUMF (Doc. 46-1), including those supported by its expert Dr. David W. Yarbrough, and therefore those facts should be deemed admitted. (Doc. 60, at 1.) However, Defendants did file

a "Statement of Material Facts to Which Exist Genuine Disputes to be Tried."[1] (Doc. 54.) While other districts, such as the Northern District of Georgia, require the opposing party to file an individually numbered response to the movant's SUMF, this District's Local Rules are not that explicit. As stated in Local Rule 56.1, facts are deemed admitted "unless controverted by a statement served by the opposing party." L.R. 56.1, SDGa. "This District's rule does not define what constitutes a 'statement,' nor can the Court locate a case doing so. Absent more direct guidance, the Court declines to import the Northern District's language requiring of such a statement individually numbered responses to a SUMF." Ratchford v. F.D.I.C., No. 6:11-CV-107, 2013 WL 2285805, at *4 (S.D. Ga. May 23, 2013). Based on this holding, to the extent Defendants' filing and responses controvert the FTC's SUMF, the Court will not deem the FTC's SUMF admitted. However, if Defendants failed to controvert any aspects of the FTC's SUMF, those facts will be deemed established as a matter of law. See id.

With this clarification, an overview of the underlying facts is as follows. Starting in 2004 or 2005, and through the date of filing of this suit, Defendant FG International began advertising,

---

[1] Defendants also filed an Affidavit by Defendant Davis (Doc. 55) which the FTC filed objections to, or in the alternative moved to exclude (Doc. 59). Based on the wealth of information and undisputed facts elsewhere in the record, the Court did not reach the merits of the FTC's objections or exclusion of this Affidavit.

marketing, distributing, and selling the Product to consumers in the United States. (Doc. 46-1, at 2.) FG International is now a registered trade name of FG Group. (Id. at 3.) Defendant Davis is the Corporate Defendants' principal, sole owner, and only employee, and since starting the Corporate Defendants he has formulated, directed, controlled, had the authority to control, and participated in their acts and practices. (Id.)

Defendants manufacture and market coatings, including the Product, for use in commercial applications. (Id. at 4.) Specifically, the Product is an epoxy-ceramic coating that is a thermal barrier and provides moisture and corrosion protection. (Doc. 54, at 2.) Defendants claim an individual named Bill Bradshaw, who is now deceased, invented the Product and named it TAR-007. (Doc. 46-1, at 4.) The Product sold by Defendants is the same as TAR-007, and Defendant Davis uses Mr. Bradshaw's representations as to its proper application thickness and substantiation. (Id. at 4-5.) In fact, Defendants have never themselves tested the Product or commissioned any thermal insulation testing on it – they simply rely on data provided by Mr. Bradshaw. (Id. at 5.)

The representations regarding the R-value of the Product are the main issue in this case. R-value is a measurement of resistance to heat flow. (Id. at 10.) The FTC's Complaint alleges Defendants claim the Product provides "an equivalent R value

greater than 30;" however, the FTC argues the claims are false, Defendants cannot substantiate them, and the Product in fact has an R-value substantially less than one. (Compl., at 1-2.) The greater the R-value, the greater the reduction in heat flow, and the more energy can be saved when heating or cooling a building. (Doc. 46-1, at 10.) The FTC's expert, Dr. Yarbrough, provides that ASTM C518 is the "Standard Test Method for Steady-State Thermal Transmission Properties by Means of the Heat Flow Meter Apparatus" and is a standard test method to determine a material's R-value and thermal properties. (Id. at 14.) Dr. Yarbrough oversaw multiple tests of the Product and found it did not meet the R-value represented by Defendants. (Id. at 15; Doc. 46-4, at 24.)

Defendants have disseminated advertising and promotional materials for the Product through online and other means, as well as directly corresponding with potential buyers stating that testing reveals the Product has an insulation value greater than R-30 when used as directed. (Doc. 46-1, at 17-19.) They have also provided prospective customers with ASTM test results completed by a third party, South West Labs ("SWL") – but, this referenced test was in fact conducted by Mr. Bradshaw on his TAR-007 product. (Id. at 18, 21-22.) Defendants know their representations concern the Product's efficacy in insulating and that prospective customers are interested in the R-value and

insulative value.  (Id. at 21.)  Defendants are unaware how SWL conducted the tests and at what thickness the Product was tested. (Id. at 22.)  Additionally, Defendants have altered the SWL report over time – removing and adding various data points prior to sending to customers.  (Id. at 30.)

Defendants also distributed a marketing document called the "Engineering Evaluation Services Report" (the "EES document") which claimed to review the Product's ASTM procedures and reports. (Id. at 19.)  However, the EES document was created by Defendants and their second-largest customer, Mr. Ghiorso.  (Id. at 23.) There is no entity called Engineering Evaluation Services - Mr. Ghiorso used the SWL data Defendant Davis provided him and drafted the EES document himself.  (Id. at 23-24.)  Therefore, this document contains false information; nevertheless, Defendants sent the EES document to prospective customers without informing them it was not in fact drafted by EES and EES was not even a real entity.  (Id. at 25.)  There were numerous other publications issued by Defendants that contained false information; however, the Court will not belabor itself with addressing each one.

In April 2019, the FTC informed Defendants of its investigation into their R-value and insulation claims and requested substantiation for the claims.  (Id. at 34.)  Defendants assert there were no misleading or false statements about the Product; nevertheless, they notified the FTC on October 25, 2019

6

they would cease and desist all advertisements for the Product
that mentioned R-value. (Doc. 54, at 8.) Defendants represent
they removed all R-value language from their marketing materials
in June 2019 and have continued to omit R-value from their
marketing material, sales material, and internet material since
then. (Id.) However, the FTC believes Defendants continued to
share false information regarding the R-value of the Product to
potential and current customers after the initiation of the
investigation. (Doc. 46-1, at 36-37.) The FTC has continued to
monitor Defendants' website since the filing of this suit, and
there are still active pages and documents containing claims about
the Product's insulation and R-value. (Id.)

During discovery, the FTC learned Defendants had not
preserved electronically stored information ("ESI") relevant to
the case and filed a motion for spoliation sanctions. (Doc. 26,
at 1.) The FTC sought "all [d]ocuments and communications
concerning [the Product] or R-value" between Defendants and
individuals or entities the FTC identified and all documents and
communications since January 1, 2014 to prospective or actual
purchasers of the Product. (Doc. 45, at 3-4 (citing Doc. 26-3, at
8-9).) Despite the FTC's instructions, Defendants did not produce
all responsive documents - in fact, through third-party discovery,
the FTC obtained copies of a communication between Defendant Davis
and the president of one of Defendants' largest customers in which

Defendant Davis responded to a specific challenge about the Product's R-value. (Id. at 4.) After the FTC inquired about missing documents, Defendants admitted to not preserving email communications with current and potential customers. (Id. at 5.) Defendant Davis additionally admitted Defendants have no document retention policy and his practice of deleting emails continued even after the filing of this Complaint. (Id. at 6.) United States Magistrate Judge Christopher Ray's September 20, 2021 Order (the "Spoliation Order") found "Defendants acted 'with the intent to deprive' [the FTC] of relevant evidence by affirmatively deleting emails with customers and potential customers after being on notice of this investigation and subsequent lawsuit." (Id. at 19.) Based on this finding, Judge Ray granted the FTC its requested sanctions and ordered:

> 1) Defendants are precluded from disputing the FTC's evidence of their marketing claims; and
>
> 2) Defendants are precluded from arguing they were unaware that consumers were questioning their R-value claims; and
>
> 3) There is a rebuttable presumption that [Defendant] Davis knew that the Corporate Defendants' claims about [the Product's] R-value were false and unsubstantiated; and
>
> 4) There is a rebuttable presumption that the destroyed ESI was relevant and favorable to the FTC and unfavorable to Defendants.

(Id. at 20.) These sanctions and rulings will be used by the Court to decide the pending motions in this case.

8

## II. DEFENDANTS' MOTION TO DISMISS OR MOTION FOR SUMMARY JDUGMENT

On October 15, 2021, Defendants filed a motion to dismiss the FTC's request for equitable monetary relief, and in the alternative a motion for summary judgment as to such claim. (Doc. 48.) The FTC argues this motion should be denied as moot because it is no longer seeking a monetary judgment against Defendants following the Supreme Court's decision in AMG Cap. Mgmt., LLC v. FTC, 141 S. Ct. 1341 (2021). (Doc. 52, at 1.) It argues that following the AMG decision, "on three separate occasions, the FTC notified both Defendants and the Court through affirmative filings that the FTC is no longer seeking equitable monetary relief under Section 13(b) of the [FTCA]." (Id.) On August 5, 2021, the FTC filed a supplemental notice regarding the AMG decision stating "the FTC hereby provides notice to the Court and Defendants that it is not currently seeking equitable monetary relief under Section 13(b) of the [FTCA] as to any defendant in this matter. However, the FTC continues to seek injunctive conduct relief under 13(b)." (Doc. 44, at 1.) Based on this, the Court finds the FTC has already clarified the issue regarding its claim for equitable monetary relief and that it is not seeking such. However, there was no Amended Complaint filed; therefore, the FTC's claim seeking a monetary judgment is technically still pending before the Court. Based on the FTC's August 5, 2021 Notice, the Court **DISMISSES WITHOUT PREJUDICE** the FTC's claim for monetary relief; therefore,

the only claim remaining before the Court is for injunctive relief under Section 13(b). Pursuant to this finding, Defendants' motion to dismiss, or in the alternative, motion for summary judgment (Doc. 48) is **DENIED AS MOOT**.

### III. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, motions for summary judgment are granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

As explained above, the Local Rules require the movant to include a statement of undisputed material facts with its motion. See L.R. 56.1, SDGa. "Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review the materials the Parties have specifically cited and legal arguments they have expressly advanced. See id.

In this action, the Clerk of Court provided Defendants notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 47.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Defendants responded to the FTC's motion for summary judgment (Doc. 53) and the FTC replied in support (Doc. 60). The time for filing materials has expired, the issues have been thoroughly briefed, and the motions are now ripe for consideration. In reaching its conclusions herein, the Court has

evaluated the Parties' briefs, other submissions, and the evidentiary record in the case.

## IV. FTC'S MOTION FOR SUMMARY JUDGMENT

The FTC moves for summary judgment on its claims that Defendants violated Section 5 of the FTCA, 15 U.S.C. § 45(a), which prohibits "deceptive acts or practices in or affecting commerce." (Doc. 46, at 14-20.)  Specifically, the FTC argues Defendants made R-value and testing claims that are material, likely to mislead consumers, and are both false and unsubstantiated.   (Id.) Defendants do not dispute they made these statements in the past. (Doc. 53, at 2.)  However, they argue they ceased making any R-value claims prior to the initiation of the suit – therefore, the only issue before the Court is "whether genuine issues of material fact exist as to whether these prior statements are false."[2]  (Id.) Additionally, Defendants argue their "previous statements regarding R-value were supported by test results procured by the originator of the product and by the product's performance in the field."  (Id. at 11.)

## A. Corporate Liability

"To establish liability under Section 5 of the FTCA, the FTC must establish that (1) there was a representation; (2) the

---

[2] The Spoliation Order provides a rebuttable presumption that Defendant Davis knew the claims about the Product's R-value were false and unsubstantiated. (Doc. 45, at 20.)

representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material." FTC v. Partners In Health Care Ass'n, Inc., 189 F. Supp. 3d 1356, 1364 (S.D. Fla. 2016) (quoting FTC v. Tashman, 318 F.3d 1273, 1277 (11th Cir. 2003)).

Defendants do not dispute there were representations made about the Product's R-value, so element one is satisfied. (See Doc. 53, at 2.)  To determine whether a representation is likely to mislead a reasonably acting consumer, courts must consider the net impression created.  Partners In Health Care, 189 F. Supp. 3d at 1364 (citing FTC v. RCA Credit Servs., LLC, 727 F. Supp. 2d 1320, 1329 (M.D. Fla. 2010)).  This goes to the falsity of the statement, which Defendants argue is a genuine issue of material fact.  The Court will address this element below.  And as for element three, "[a] representation or omission is material if it is the kind usually relied on by a reasonably prudent person." FTC v. Nat'l Urological Grp., Inc., 645 F. Supp. 2d 1167, 1190 (N.D. Ga. 2008) (citations omitted).  "Express claims, or deliberately made implied claims, used to induce the purchase of a particular product or service are presumptively material."  Id. (citation omitted). The R-value claims for the Product are clearly material because Defendants provided them to customers and potential customers through marketing materials, as well as direct communications, proving such information was important in buying

decisions and used to induce the Product's purchase. Based on this, element three is satisfied and the Court will turn its attention to element two.

"To demonstrate that a claim is likely to mislead a reasonable customer, the FTC may proceed under a 'falsity theory,' a 'reasonable basis theory,' or both. Id. (citation omitted). "If the FTC proceeds under a falsity theory, it must demonstrate either that the express or implied message conveyed by the ad is false." Id. (citations and quotations omitted). If it proceeds under a reasonable basis theory, "it must demonstrate that the advertiser lacked a reasonable basis – or adequate substantiation – for asserting that the message was true." Id. In this case, the FTC proceeds under both theories. As to falsity, the FTC argues Defendants' claims are provably false because (1) properly conducted tests demonstrate the Product's R-value is far less than advertised, and (2) correct calculations of R-value using Defendants' own data supports the same miniscule R-value, substantially lower than advertised. (Doc. 46, at 16.) As to substantiation, the FTC argues although Defendants claim their C518 laboratory tests establish the Product's insulative properties, they do not even possess any tests illustrating the alleged results. (Id. at 18.) The FTC also argues Defendants lack expert evidence supporting their claims or contesting Dr. Yarbrough's methodology or conclusions. (Id. at 19.)

Defendants assert SWL performed the ASTM C518 tests for Bill Bradshaw and they convert the K-value from that test into an R-value for marketing purposes. (Doc. 53, at 12.) Additionally, they argue the Product will never cure at the thickness Dr. Yarbrough opines the SWL testing occurred, so his testing is incomparable. (Id. at 13.) Defendants do not move to exclude Dr. Yarbrough's opinions; however, they have filed a motion to preserve a Daubert challenge for trial. (See Doc. 50.) Defendants also argue Defendant Davis has sold the Product to at least 25 different customers in hundreds of transactions, yet he "has never had a customer complain about the [P]roduct[']s performance other than one instance when the [P]roduct was applied at a cured thickness [less than recommended]."[3] (Doc. 53, at 15.) Defendants believe this establishes the Product acts as an excellent insulator. (Id.)

As to the FTC's claims explicitly regarding the R-value, Defendants admit they "have never liked using R-value in material, have stopped using R-value, will consent to an injunction to not use R-value going forward and will take steps to make old marketing material unavailable on the internet." (Id. at 16.) Defendants believe that since they have stopped making R-value claims, the FTC cannot seek a judicial remedy for a past violation of the FTCA.

---

[3] The Spoliation Order precludes Defendants from arguing they were unaware that consumers were questioning their R-value claims; therefore, this line of argument is in violation of that Order and will be ignored. (See Doc. 45, at 20.)

(Id.)   Overall, however, Defendants do not dispute the FTC's ability to seek some level of injunctive relief for more than just the Product's current formulation but argue it should only include R-value representations for the Product or any products derived from it.  (Id. at 16-17.)  In response, the FTC argues Defendants have conceded injunctive relief is appropriate but their proposed injunction exempts Defendant Davis and would not stop their ongoing deceptive conduct.  (Doc. 60, at 1.)  Therefore, the FTC requests the Court enter its proposed final order of injunction which applies to all Defendants, including Defendant Davis.  (Id.)

Primarily, the Court turns back to the falsity and reasonable basis theories and finds Dr. Yarbrough has established that based on overseeing multiple tests of the Product, the samples returned an average R-value of R-.0076 at the suggested 10-mils thickness.  (Doc. 46-1, at 16.)  However, Defendants marketed the Product as having an R-value of R-30 at 10 mils.  (Id. at 17-18.)  While there is some speculation by Defendants that Dr. Yarbrough does not conduct his tests correctly or use the Product at the proper thickness, they admit two of his panels achieved the recommended thickness of 10 mils.  (See Doc. 53, at 13.)  Defendants also do not contest the R-values associated with these "correct" panels, which come out to R-values of less than one.  (See Doc. 46-4, at 24.)  Defendants also admit they market the Product at a value of R-30 and higher; therefore, the Court finds there is no question

the Corporate Defendants' claimed R-values were false and unsubstantiated.   This satisfies element two.   Based on the foregoing, there is no genuine dispute of material fact the Corporate Defendants violated Section 5 of the FTCA.

## B. Individual Liability

The only remaining question is Defendant Davis' individual liability for these acts.  "Individuals can be held liable for corporate practices that violate the FTCA . . . , but only if the FTC has first established the corporation's liability."  Partners In Health Care, 189 F. Supp. 3d at 1364 (citation omitted).  "After establishing a corporate violation, the FTC can establish individual liability under Section 5 of the [FTCA] by showing that (1) an individual participated directly in the deceptive acts or practices *or* had authority to control them, and (2) that the individual had some knowledge of the corporation's improper practices."  Id. at 1367 (quotations and citation omitted).  "An individual's status as a corporate officer gives rise to a presumption of ability to control a small, closely-held corporation."  Id. (citation omitted).

In this case, it is undisputed Defendant Davis is the sole owner and only employee of the Corporate Defendants; therefore, there is no question he individually participated in the deceptive acts or practices at issue here *and* had the authority to control them. (See Doc. 53, at 3.) As to element two, Defendants already

admitted "[Defendant] Davis is the only person who takes any action for the [Corporate Defendants]" and that in the event the Court finds the Corporate Defendants violated the FTCA, "the only individual who participated, controlled and had knowledge of the acts would be Defendant Davis." (Doc. 31, at 6.) Therefore, there is no dispute Defendant Davis meets the requirements necessary to hold an individual liable for a violation of the FTCA. Based on the foregoing, the Court finds Defendants have engaged in the deceptive acts and practices as alleged by the FTC and **GRANTS** the FTC's motion for summary judgment (Doc. 46). The Court also finds injunctive relief is appropriate and will review the Parties' proposed injunction orders below.

### V. PERMANENT INJUNCTION

Pursuant to 15 U.S.C. § 53(b), the FTC moves to obtain permanent injunctive relief for Defendants' acts or practices in violation of Section 5(a) of the FTCA. (Compl., at 1.) Section 13(b) of the FTCA provides: "in proper cases the [FTC] may seek, and after proper proof, the court may issue, a permanent injunction." 15 U.S.C. § 53(b)(2). "Pursuant to this statute, the [FTC] may bring suit for injunctive relief when it has reason to believe that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the [FTC]." FTC v. Citigroup, Inc., 239 F. Supp. 2d 1302, 1304

(N.D. Ga. 2001) (quoting 15 U.S.C. § 53(b)(1)).  "The authority to grant permanent injunctive relief also includes the power to grant any ancillary relief necessary to accomplish complete justice." Id. at 1304-05 (citation omitted).  "Permanent injunctive relief is appropriate when the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future." Partners In Health Care, 189 F. Supp. 3d at 1369 (quoting RCA Credit Servs., 727 F. Supp. 2d at 1335).  "[C]ourts have discretion to include 'fencing-in' provisions which extend beyond the specific violations at issue in the case to prevent Defendants from engaging in similar deceptive practices in the future.  These provisions must bear a reasonable relation to the unlawful practices found to exist."  Id. at 1370 (internal citations and quotations omitted).

In this situation, the Court finds permanent injunctive relief is appropriate, especially in light of the fact Defendants continued to disseminate false R-values to customers after the FTC notified Defendants of its investigation and after the initiation of this suit.  (Doc. 46-1, at 34-37.)  Defendants argue they have stopped making claims regarding R-value, so the Court is simply dealing with a past violation of the FTCA; however, Defendants destroyed emails with potential customers and as part of the Spoliation Order, there is a rebuttable presumption the destroyed ESI was relevant and unfavorable to Defendants, so the Court will

assume Defendants continued to send false R-values to customers. (See Doc. 53, at 16; Doc. 45, at 20.) Both Parties submitted proposed orders for permanent injunction. (Doc. 46-6, Doc. 53-1.)

Defendants "do not dispute the ability of the FTC to seek some level of injunctive relief for more than the current formulation of [the Product]" but argue the FTC cannot use "fencing" and its proposed order to escape the pleading requirements of Federal Rule of Civil Procedure 15. (Doc. 53, at 16-17.) The FTC argues "[t]he Complaint is replete with recitations of Defendants' extensive R-value, insulation, and testing claims both numeric and qualitative alike" and it is able to use "fencing" to seek relief beyond the specific allegations. (Doc. 60, at 14-15.) Further, the FTC argues Defendants' proposed order "exempts [Defendant] Davis entirely and would not halt Defendants' ongoing deceptive conduct." (Id. at 1.)

The Supreme Court has found "it reasonable for the [FTC] to frame its order broadly enough to prevent [Defendants] from engaging in similarly illegal practices in future advertisements." FTC v. Colgate-Palmolive Co., 380 U.S. 374, 395 (1965). The FTC "is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past. Having been caught violating the [FTCA], [Defendants] must expect some fencing in." Id. (citations omitted). The FTC "cannot be required to confine

its road block to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its order may not be by-passed with impunity." FTC v. Ruberoid Co., 343 U.S. 470, 473 (1952).   Based on these guidelines, the Court finds it appropriate to allow the FTC to reach beyond the simple allegations of the Complaint to prevent Defendants from violating the FTC in a similar fashion in the future.   The Court therefore **GRANTS** the FTC's motion for permanent injunction and adopts the FTC's proposed order.   The Permanent Injunction Order will be entered separately on the docket.

## VI. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the FTC's motion for summary judgment (Doc. 46) is **GRANTED**, Defendants' motion to dismiss (Doc. 48) is **DENIED AS MOOT**, and Defendants' motion to preserve Daubert challenge (Doc. 50) is **DENIED AS MOOT**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of the FTC, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this /9th day of August, 2022.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA